88 A.3d 954

**Joseph PILCHESKY, Appellant**

v.

**LACKAWANNA COUNTY, Lackawanna County Commissioners, Corey O'Brien, James Wansacz and Patrick O'Malley, Appellees.**

**No. 40 MAP 2013.**

Supreme Court of Pennsylvania.

Submitted Sept. 27, 2013.

Decided March 26, 2014.

634

Kathleen Marie Kotula, Esq., PA Department of State, for Bureau of Elections, Participants.

John Ralph Williams, Jr., Esq., Minora, Minora, Colbassani, Krowiak & Mattioli, Scranton, for Lackawanna County Election Bureau, Participants.

Joseph Pilchesky, pro se.

Donald J. Frederickson, Jr., Esq., for Lackawanna County, Appellee.

Joseph A. O'Brien, Esq., Oliver Price & Rhodes, Clarks Summit, for Corey O'Brien, James Wansacz and Patrick O'Malley, Appellees.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## *OPINION*

Justice STEVENS.

This appeal questions whether county commissioners may place an ordinance-generated referendum question on the primary election ballot seeking to amend a home rule charter pursuant to 53 Pa.C.S. § 2941 without first seeking election of a government study commission under 53 Pa.C.S. § 2911 when the question adopted by the ordinance attempts to abolish certain elected row offices.

### *Facts*

Lackawanna County is a third class county originally organized under the Commonwealth of Pennsylvania's "The County Code." 16 P.S. § 101, *et seq.* The Home Rule Charter and Optional Plans Law, 53 Pa.C.S. § 2901 *et seq.* (hereinafter "the Home Rule Law") authorizes counties to utilize home rule charters [1] to establish a local government framework. Article 9, Section 2 of the Pennsylvania constitution provides that municipalities shall have the right and power to frame and adopt home rule charters, and a municipality which has a home rule charter may exercise any power or perform any function not denied by the constitution, by its home rule charter, or by the General Assembly. PA. CONST. art. 9, § 2.

On January 3, 1977, Lackawanna County enacted the Lackawanna County Home Rule Charter (hereinafter "the Charter"). *See* 335 PA. CODE § 1.17–1702 (1977) (establishing the effective date). Section 1.2–201 of the Charter identifies elected officers of the County as including the Sheriff, Clerk of Judicial Records, Recorder of Deeds, and Register of Wills.

---

1. As it is defined in the Home Rule Law, this term means a written document defining the powers, structure, privileges, rights and duties of the municipal government and limitations. The charter also shall provide for the composition and election of the governing body, which in all cases shall be chosen by popular elections. 53 Pa.C.S. § 2902.

335 PA. CODE § 1.2–201(e)–(h) (1977). Sections 1.7–702–1.10–1002 enumerate the powers and responsibilities of these four positions respectively. 335 PA. CODE §§ 1.7–702(a)–(f), 1.8–802, 1.9–902, and 1.10–1002 (1977). Section 1.6 of the Charter directs that it may be amended in conformity with the provisions of the Home Rule Law. 335 PA. CODE § 1.16–1609 (1977).

On January 23, 2013, the Lackawanna County Board of Commissioners (hereinafter "the Commissioners") held the first reading of Ordinance 13–0019 (hereinafter "Ordinance 224") whereby they sought to direct that a referendum question be placed on the May 21, 2013, municipal primary election ballot proposing to abolish the elected offices of Sheriff, Clerk of Judicial Records, Recorder of Deeds and Register of Wills, and to redefine the duties that had been assigned to those positions as legislative powers under § 1.3–302 of the Charter.[2] The revised Charter also would contain a new Section 1.2–201 which would eliminate the four officers from the list of elected officers of the County and repeal Sections 1.7–701, 1.7–702, 1.8–801, 1.8–802, 1.9–901, 1.9–902, 1.10–1001, and 1.10–1002 which together regulate the election, powers and duties of those officers. Under the Commissioners' proposal, the office of Sheriff would become an appointed position, and Ordinance 224 also sought to change Section 1.3–302 of the Charter entitled "Powers and Duties" of the Commissioners,

**2.** Section 1.3–302. of the Charter, entitled "Powers and Duties," provides, in pertinent part:

All legislative powers which may be exercised by the County under the Constitution and Laws of the Commonwealth of Pennsylvania shall be vested in the Board of Commissioners, except as otherwise stated in this Charter. The Board of Commissioners shall have, but not by way of limitation, the following powers:

(a) to enact, amend, or repeal ordinances, resolutions not inconsistent with this Charter, Initiative and Referendum, the Constitution and Laws of the Commonwealth of Pennsylvania.

\* \* \*

(*l*) to establish, abolish or reorganize departments and/or programs to promote efficiency and economy; except that any reorganization will not eliminate offices established by this Charter.

335 PA ADC § 1.3–302(a), (*l*).

to include additional subparagraphs (v) and (w) which would read:

    (v) to appoint a sheriff, who shall retain and exercise those powers granted by the General Laws of the Commonwealth of Pennsylvania for those counties whose population is most equal to that of Lackawanna County. The sheriff shall have the power to collect all fines and penalties for violation of county ordinances and the transmittal of those monies to the County Treasurer, provide security for County property and personnel and to perform all other duties as may be directed by the Board of Commissioners from time to time; and

    (w) to exercise all powers, functions and duties previously assigned by law to the Clerk of Judicial Records, Recorder of Deeds and Register of Wills under this Charter and the General Laws of the Commonwealth of Pennsylvania for those counties whose population is most equal of that of Lackawanna County.

On February 5, 2013, at a regular public meeting, the Commissioners adopted Ordinance 224.[3] In light of the fact that the ballot question related to proposed amendments to the Charter, on February 7, 2013, President Judge Thomas J. Munley of the Lackawanna County Court of Common Pleas appointed himself along with two other judges of the same court, Judges Terrence R. Nealon and Vito P. Geroulo, to serve as the Lackawanna County Board of Elections.

Thereafter, on February 11, 2013, Appellant Joseph Pilchesky (hereinafter "Pilchesky") filed a *pro se* petition requesting that the trial court strike the ballot question or, in the alternative, that the Board of Elections separate the single

---

3. Ordinance 224, as it originally had been drafted by the Commissioners, read as follows:

    Shall the Lackawanna County Home Rule Charter be amended to abolish the elected offices of Sheriff, Clerk or Judicial Records, Recorder of Deeds and Register of Wills and deem the duties and responsibilities associated with the abolished offices "Legislative Powers" under Section 1.3–302 of the Lackawanna County Home Rule Charter, said amendments to take effect upon expiration of the elected officials' current term?

ballot question into four queries, one for each of the offices to be abolished. In his petition, Pilchesky also asserted that Ordinance 224 directs a ballot question that proposes a change in the form of government rather than an amendment to the Charter and that such a change can be effected only by petition or ordinance seeking election of a government study commission [4] under 53 Pa.C.S. § 2911.[5]

Following a hearing and argument held on March 15, 2013, the trial court denied the challenge seeking to bar Ordinance 224 from appearing on the primary ballot. Notwithstanding, after finding that in its proposed "all or nothing form" the

4. The Home Rule Law defines a government study commission as "[t]he body elected under the provisions of Subchapter B (relating to procedure for adoption of home rule charter or optional plan of government"). 53 Pa.C.S. § 2902.

5. 53 Pa.C.S. § 2911, entitled "submission of question for election of a government study commission[,]" reads:

(a) **General rule.**—Whenever authorized by ordinance of the governing body or upon petition of the electors to the county board of electors of the county wherein the municipality is located, an election shall be held upon one of the following questions:

Shall a government study commission of (seven, nine or eleven) members be elected to study the existing form of government of the municipality, to consider the advisability of the adoption of an optional form of government and to recommend whether or not an optional plan of government should be adopted?

Shall a government study commission of (seven, nine or eleven) members be elected to study the existing form of government of the municipality, to consider the advisability of the adoption of a home rule charter, and if advisable, to draft and to recommend a home rule charter?

Shall a government study commission of (seven, nine or eleven) members be elected to study the existing form of government of the municipality, to consider the advisability of the adoption of an optional form of government or a home rule charter, to recommend the adoption of an optional form of government or to draft and to recommend a home rule charter?

(b) **Petition for election.**—The petition calling for the election shall be in the form required by subsection (e) and shall be signed by electors comprising 5% of the number of electors voting for the office of Governor in the last gubernatorial general election.

(c) **Ordinance authorizing election.**—Within five days after the final enactment of an ordinance authorizing the election, the municipal clerk or secretary shall file a certified copy of the ordinance with the county board of elections, together with a copy of the question to be submitted to the electors.

53 Pa.C.S. § 2911(a)-(c).

referendum question authorized by Ordinance 224 did not permit voters to accept or reject individually the elimination of the row officers and the transfer of their powers and duties to the Commissioners, especially in light of the fact that the offices had been elected for over 134 years, the trial court, exercising its discretion in its capacity as the Board of Elections, granted Pilchesky's petition to the extent it sought to have the referendum question submitted to the electorate as four, separate inquiries. *See* Memorandum and Order, filed 3/15/13 at 61–62. In doing so, the trial court found authority exists to support a finding that an amendment to a home rule charter to eliminate the office of Register of Wills and to appoint the formerly elected Sheriff constitutes a change in the form of government. Memorandum and Order, filed 3/15/13 at 29–30. Nevertheless, the trial court rejected Pilchesky's argument that the changes to the existing form of government proffered by Ordinance 224 can be accomplished only following an analysis by a government study commission in light of 53 Pa.C.S. § 2911(a).

The trial court reasoned that 53 Pa.C.S. § 2911 is contained in Subchapter B of the Home Rule Law which is entitled "Procedure for Adoption of Home Rule Charter or Optional Plan of Government." It explained that Section 2911 provides for the submission of a referendum question for the election of a government study commission to review the existing form of municipal government and thereafter recommend or not recommend the adoption of a home rule charter or an optional plan of government. *See* 53 Pa.C.S. § 2911(a). Once the government study commission has conducted hearings and completed its review, it is required to issue a report expounding upon its recommendation as to whether the existing form of government should remain unchanged or whether a referendum question should be submitted to the electorate to adopt a home rule charter or one of the optional plans of government. *See* 53 Pa.C.S. §§ 2921–2925. The trial court stressed that, to the contrary, Subchapter C of the Home Rule Law entitled "Amendment of Existing Charter or Optional Plan" governs amendments to an existing home rule charter and

authorizes an amendment thereto by way of a referendum question pursuant to either an ordinance of the governing body or by the initiative procedure based upon a petition of the electors. 53 Pa.C.S. §§ 2941–2942.[6] The trial court concluded that as §§ 2943 and 2944 [7] of Subchapter C prescribe

6. 53 Pa.C.S. § 2941, entitled "procedure for amendment of charter or optional plan," provides:

(a) **Procedure.**—The procedure for amending a home rule charter or optional plan of government shall be through the initiative procedure and referendum or ordinance of the governing body as provided for in this subpart.

(b) **Changes in method of election.**—Changes in the method of election of a municipal governing body from at-large elections to elections by district, maintain at-large elections or a combination of at-large elections and elections by district may be implemented by amending a home rule charter or optional plan without creation of a government study commission.

(c) **Conflict in the question.**—If two or more questions appear on the ballot at the same election and such questions are in conflict and more than one receives the approval of the voters, the question which receives the largest number of affirmative votes shall prevail over the others.

53 Pa.C.S. § 2941(a)-(c).

53 Pa.C.S. § 2942 entitled "Initiation of amendment by electors or council" reads:

A referendum on the question of amendment of a home rule charter or an optional plan of government may be initiated by petition of the electors or such a referendum may be initiated by an ordinance of the governing body. A proposal for amendment of an optional plan shall be limited to the additional options provided for in section 2924 (relating to specificity of recommendations).

53 Pa.C.S. § 2942.

7. These statutes read in their totality as follows:

**2943. Petition for referendum or ordinance proposing amendment**
(a) **Filing.**—A petition containing a proposal for referendum on the question of amending a home rule charter or an optional plan of government signed by electors comprising 10% of the number of electors voting for the office of Governor in the last gubernatorial general election in the municipality, or an ordinance of the municipal governing body proposing amendment of a home rule charter or an optional plan, shall be filed with the election officials not later than the 13th Tuesday prior to the next primary, municipal or general election. The petition and the proceedings therein shall be in the manner and subject to the provisions of the election laws which relate to the signing, filing and adjudication of nomination petitions insofar as such provisions are applicable, except that no referendum petition shall be signed or circulated prior to the 20th Tuesday before the election nor later than the 13th Tuesday before the election. The

the time and manner of effecting the aforementioned process, and neither section refers to a government study commission, a home rule charter municipality may amend its existing form of government via an ordinance-generated referendum question without the necessity of first seeking the election of a government study commission. Memorandum and Order, filed 3/15/13 at 33–34 *citing In re Petition for Agenda Initiative*, 821 A.2d 203, 207 (Pa.Cmwlth.2003), *abrogated on other grounds by, In re Stevenson*, 615 Pa. 50, 40 A.3d 1212 (2012). The trial court further reasoned as follows:

'The maxim *expressio unius est exclusio alterius* provides that the inclusion of a specific matter in a statutory provision implies the exclusion of others.' *Sawink, Inc. v. Philadelphia Parking Authority*, 34 A.3d 926, 930 (Pa.Cmwlth. 2012), *aff'd* [618 Pa. 466] 57 A.3d 644 (Pa.2012). The inclusion of certain matters, to wit, the study of and recom-

name and address of the person filing the petition shall be clearly stated on the petition.

**(b) Review and disposition of petition.**—The election officials shall review the initiative petition as to the number and qualifications of signers. If the petition appears to be defective, the election officials shall immediately notify the persons filing the petition of the defect. When the election officials find that the petition as submitted is in proper order, they shall send copies of the initiative petition without signatures thereon to the governing body and to the Department of Community and Economic Development. The initiative petition as submitted to the election officials, along with a list of signatories, shall be open to inspection in the office of the election officials.
53 Pa.C.S. § 2943.

**§ 2944. Time and manner of submission of question**
A referendum on the question of the amendment of a home rule charter or an optional plan of government shall be held when the election officials find that the initiative petition or ordinance of the governing body is in proper order. The referendum shall be governed by the provisions of the act of June 3, 1937 (P.L. 1333, No. 320), [FN1] known as the Pennsylvania Election Code. The election officials shall cause the question to be submitted to the electors at the next primary, general or municipal election occurring not less than the 13th Tuesday following the filing of the initiative petition or ordinance with county board of elections. At the election, the question shall be submitted to the voters in the same manner as other questions are submitted under the Pennsylvania Election Code. The county board of elections shall frame the question to be placed upon the ballot.
53 Pa.C.S. § 2944.

mendation to adopt a home rule charter or an optional plan of government, in 53 Pa.C.S. § 2911 implies the exclusion of other governmental actions, such as the amendment of a home rule charter to abolish particular municipal offices and to alter the procedure for selecting a municipal officer. As a result of the exclusion of home rule charter amendments from Section 2911 and Subchapter B of the HRC & OPL, the Board of Commissioners may secure the changes proposed by Ordinance # 224 without the need for a government study commission.[12]

---

12. By expressly stating that the County Commissioners do not have the power to unilaterally eliminate County Offices, the County Charter likewise envisions the necessity of an ordinance for a referendum question providing for an amendment of the home rule charter to abolish county offices created by the County Charter. Section 1.3-302 of the County Charter delineates the legislative powers of the Board of Commissioners and states that the Commissioners possess the authority "to establish, abolish, or reorganize departments and/or programs to promote efficiency and economy; *except that any reorganization will not eliminate offices established by this Charter."* 335 Pa.Code § 1.3-302(1) (emphasis added).

Memorandum and Order, filed 3/15/13 at 34–35.

In an unpublished memorandum opinion, the Commonwealth Court unanimously affirmed. *See Pilchesky v. Lackawanna County, Lackawanna County Commissioners Corey O'Brien, James Wansacz and Patrick O'Malley, Nos. 451 & 452, C.D.2013, slip op.* at 11 (Pa.Cmwlth. April 15, 2013). In its brief discussion of the within issue,[8] the Commonwealth Court explained it had discerned no error in the trial court's conclusion the Commissioners could seek the change in the form of government proposed under Ordinance 224 pursuant to 53 Pa.C.S. § 2941. The Court reasoned that the Home Rule Law includes both a procedure for electing a government study commission to examine the merits of changing an existing governmental form and a procedure for amending an existing charter or optional plan which are not necessarily mutually exclusive, and when the legislature intended exclusivity, it made such an intention clear. In support of this

8. In its Opinion, the Commonwealth Court considered issues raised in four appeals that had been consolidated for its review, though only a single issue raised by Pilchesky is before us herein.

analysis the Commonwealth Court referenced 53 Pa.C.S. § 3171 which instructs that the procedure for repealing an optional plan shall be as provided for in 53 Pa.C.S. § 2911 for the adoption of a home rule charter or optional plan "excluding the procedure provided in [the sections related to amendment]." *Pilchesky,* Nos. 451 & 452, *slip op.* at 11 *citing* 53 Pa.C.S. § 3171.

Pilchesky filed a timely petition for allowance of appeal *pro se* with this Court. On May 16, 2013, we granted allocatur limited to the following question:

> Did the Commonwealth Court err at law or abuse its discretion when it affirmed the trial court's decision that the four-part referendum question proposed within the County's Ordinance 224 was an allowable amendment to the Lackawanna County Home Rule Charter?

## Arguments

Pilchesky contends the elimination of four elected row offices would operate to change the form of government, and the Commissioners cannot seek to change the form of government via an amendment to the Charter without the benefit of a government study commission. While he acknowledges it is "without question" proposals to amend the Charter are permitted by enacting an ordinance, he maintains that "the amendment cannot be enacted to abolish four elected row offices and replace them with appointed positions." Pilchesky's Brief at 16.[9] Pilchesky concedes that the voters herein rejected all four referendum questions, but maintains that the election results did not resolve the issue of whether a referendum question generated through the adoption of an ordinance can amend the Charter where the effect of the ordinance would be to change the form of government. Pilchesky argues that changing an elective office to an appointed adminis-

9. While Pilchesky repeatedly represents that the Ordinance would result in the elected offices becoming appointed positions, the Ordinance sought to abolish the offices of Clerk of Judicial Records, Recorder of Deeds and Register of Wills and deem their duties legislative powers and to convert the office of Sheriff from an elected to an appointed position.

trative position is a change in the form of government. He further posits such a change can be effectuated only by petition or ordinance seeking election of a government commission under 53 Pa.C.S. § 2911 and not by a petition or ordinance to amend the Charter under 53 Pa.C.S. § 2941. Instead, he points to 53 Pa.C.S. § 2930 [10] which he summarizes as declaring that "any modification in the election of municipal officials is a complete and separate form of government for submission to the electors." Pilchesky's Brief at 15.

In support of his position, Pilchesky relies upon *McCaskey v. Allegheny County Dept. of Elections*, 139 Pa.Cmwlth. 229, 590 A.2d 77 (1991); *Wolfgang v. Allegheny County Dept. of Elections*, 157 Pa.Cmwlth. 346, 629 A.2d 316 (1993); and *Borough of Warren v. County Bd. of Elections of Warren County*, 59 Pa.Cmwlth. 137, 425 A.2d 1113 (1981). However, none of these cases speak directly to the issue Pilchesky presents herein.

In *McCaskey*, the Petitioner had sought to place a referendum question on the May 1991 primary election ballot to repeal the township manager/secretary election process that had been approved by voters only six months earlier in November 1990. *McCaskey*, 590 A.2d at 77. The issue before the Commonwealth Court concerned whether the trial court abused its discretion or committed an error of law in upholding the decision of the Allegheny County Department of Elections to reject the placing of such a question on the ballot. While the Commonwealth Court held that the trial court neither erred at law nor abused its discretion in affirming the Department's refusal to place the question at issue on the ballot because it proposed a change in the form of government, it determined an ordinance which would lead to such a

10. This provision states that:

> [f]or the purposes of this subpart, each of the optional forms of government provided by this subpart and each of those optional forms as modified by any available provisions concerning size of council, election of municipal officials and the basis for electing councilmen is hereby declared to be a complete and separate form of government provided by the General Assembly for submission to the electors.

53 Pa.C.S. § 2930.

modification of the form of government was improper within the context of the five year waiting period provided for in 53 P.S. §§ 1–218.[11] As the prior referendum question proposing to elect rather than appoint a manager/secretary had been placed on the ballot in November of 1990, was approved by voters, and was scheduled to become effective January 1, 1992, the Commonwealth Court found the trial court had correctly interpreted §§ 1–218 and 1–219 as barring the electorate from voting on another change regarding the election of municipal officers until after the home rule charter or optional plan had become final so as to reflect the legislative intent of ensuring a testing period for citizens to permit a given type of government a fair chance to be successful before seeking a seemingly more attractive alternative. *Id.*

Similarly, in *Wolfgang*, the petitioners filed a petition with the Allegheny County Department of Elections requesting that a referendum be placed on the November 1992 ballot questioning whether the composition of the city council should be reduced from nine to five members and elected by district. However, Pittsburgh's home rule charter had been amended effective January 1990 to change the method of electing council members from election at-large to election by districts. *Wolfgang*, 629 A.2d at 317. The Commonwealth Court was

11. This provision, which had been repealed by Act of Dec. 19, 1996, P.L. 1158, No. 177, § 2(a) (as amended 53 Pa.C.S. §§ 2911–2930), appeared in Article II of the Act entitled "Procedure for Adoption of a Home Rule Charter of Optional Plan of Government" and read as follows:

> The voters or any municipality which has adopted a home rule charter or an optional plan of government pursuant to this act may not vote on the question of changing the form of government until five years after the home rule charter or optional plan became effective.

53 Pa.C.S. § 1–218 *repealed by* Act of Dec. 19, 1996, P.L. 1158, No. 177, § 2(a) (as amended 53 Pa.C.S. §§ 2911–2930).

> Presently, 53 Pa.C.S. § 2929 states:
> § 2929.   **Limitation on changing new form of government:**
> The voters of any municipality which has adopted a home rule charter or an optional plan of government pursuant to this subpart may not vote on the question of changing the form of government until five years after the home rule charter or optional plan became effective.

53 Pa.C.S. § 2929.

called upon to consider whether the trial court erred in holding that the 1990 modification of the home rule charter had changed the form of government and thereby caused the commencement of the five-year waiting period on referenda which sought additional changes in the form of government. After finding that the amendment constituted a change in the form of government under 53 P.S. § 1–219[12] and the legislative intent would be better served by allowing the citizens of Pittsburgh a reasonable period of time to test the form of government created by the 1990 amendment, the Commonwealth Court affirmed the order of the trial court. *Id.*

In *Borough of Warren,* the appellants had filed a petition with the Board of Elections of Warren County for a referendum to amend the existing home rule charter to increase the number of members on the council, change the manner of their election from at-large to ward or district, and provide for their discretionary compensation. The amendments also would alter the existing mayoral duties. Once again, the Commonwealth Court framed the issue before it as whether the petition for referendum, if adopted, would change the form of government such that it would be barred by 53 P.S. § 1–219 and held that once the electors had put in place a home rule charter or optional plan of government which included provisions regarding the size of and the basis for electing council, they had created a complete and separate form of government not subject to change by them for five years. *Warren,* 425 A.2d at 1115. The Court determined that this would hold true

12. This provision, which also had been repealed by Act of Dec. 19, 1996, P.L. 1158, No. 177, § 2(a) (as amended 53 Pa.C.S. §§ 2911–2930), appeared in Article II of the Act entitled "Procedure for Adoption of a Home Rule Charter of Optional Plan of Government" and read as follows:

> For the purposes of this act, each of the optional forms of government provided by this act and each of said optional forms as modified by any available provisions concerning size or council, *election of municipal officials,* the basis for electing councilmen, is hereby declared to be a complete and separate form of government provided by the Legislature for submission to the voters of the municipality. (emphasis added.)

53 P.S. § 1–219, *repealed by* Act of Dec. 19, 1996, P.L. 1158, No. 177, § 2(a) (as amended 53 Pa.C.S. §§ 2911–2930).

even though such an interpretation of the relevant statutory language would impinge upon the procedure provided by the Home Rule Law for amending a charter or optional plan of government through either an initiative procedure of referendum or ordinance of the governing body. *Id. citing* 53 P.S. §§ 1–218, 1–219, 1–221, *repealed by* Act of Dec. 19, 1996, P.L. 1158, No. 177, § 2(a) (as amended 53 Pa.C.S. §§ 2911–2930).[13]

Therefore, while in each of these cases upon which Pilchesky relies the Commonwealth Court found that proposed ballot questions would result in changes to the form of government, the Court did not provide that such changes cannot be done through an ordinance-generated referendum, but rather determined an ordinance which would lead to such changes was improper within the context of the five year waiting period. In the matter *sub judice*, thirty-six years has passed since the Charter became effective; therefore, any concern for ensuring that the citizenry allows a reasonable time period for the County's form of government to succeed under the charter is not implicated. Nevertheless, Pilchesky stresses that the Commonwealth Court erred in characterizing the question

---

13. Pilchesky fails to cite to *Lyons v. City of Pittsburgh*, 137 Pa.Cmwlth. 330, 586 A.2d 469, 471 (1991), *appeal denied*, 527 Pa. 670, 593 A.2d 845 (1991) wherein the Commonwealth Court held that as more than five years had passed since the city's home rule charter had been adopted, the five year moratorium relied upon in *Warren* was inapplicable. In *Lyons*, a city council member brought a declaratory judgment action against the city arguing he was entitled to complete the four year council term to which he had been elected, despite the fact he had lost his council seat prior to the expiration of the term due to an amendment to the home rule charter which provided for district elections rather than at-large elections for council members. Finding that he had no constitutional right to continue in office, the Court stated that he must show he retained a statutory right thereto. Relying upon 53 Pa.C.S. § 2941's predecessor, 53 P.S. § 1–221(b), the Commonwealth Court stated that the statute clearly demonstrated the General Assembly's intent to allow an existing home rule charter to be amended to change the system of electing council members, and such an amendment is not a change in the form of government tantamount to the equivalent of adopting a home rule charter. *Lyons*, 586 A.2d at 471–472. The Court, therefore, found *Borough of Warren* and its progeny did not preclude such an amendment of the home rule charter. *Lyons*, 586 A.2d at 471 (stating "[i]n the case we are now considering, more than five years has passed since the City's Home Rule Charter was adopted, so *Borough of Warren* is inapplicable.").

adopted by Ordinance 224 as simply an amendment to the Charter because the purpose of 53 Pa.C.S. § 2929 is to prohibit a change in the form of government for five years in an effort to provide the most recent change an opportunity to function. By pursing a change in the form of government under the guise of proposing an amendment, as Pilchesky maintains the County did in this case, Section 2929 could be circumvented if there were a change in the form of government within the past five years. Pilchesky's Brief at 15–16. Pilchesky urges that because a government study commission is vital to due process and accountability, this Court must provide instruction as to when its appointment is proper, in light of the current confusion within the statutory provisions. Pilchesky's Brief at 16–17.

In response to Pilchesky's claims, the Commissioners rather tersely assert that 53 Pa.C.S. § 2911 calls for the election of a government study commission when a municipality seeks to study its current governmental form and consider establishing a home rule charter or an optional plan of government. The Commissioners maintain this statutory provision did not require a governmental study proceeding prior to the time they sought to amend the Charter under Ordinance 224 in light of 53 Pa.C.S. §§ 2941–2944. Commissioners' Brief at 10.

In the alternative, the Commissioners suggest this appeal should be dismissed as moot due to the fact that a primary election was held on Tuesday, May 21, 2013, in Lackawanna County at which time the voters rejected Ordinance 224. The Commissioners recite the well-settled legal principle that this Court will not decide moot questions, and the mootness doctrine requires an actual claim or controversy to be present at all stages of the judicial process before it will be deemed reviewable. Commissioners' Brief at 12, citing, Com., Dept. of Environmental Protection v. Cromwell Tp., Huntingdon County, 613 Pa. 1, 32 A.3d 639, 652 (2011); In re Cain, 527 Pa. 260, 590 A.2d 291, 292 (1991). The Commissioners contend that the actual claim or controversy present at the onset of the litigation herein was whether the electorate of Lackawanna County properly could amend the Charter to eliminate the

aforesaid elected offices. In light of the fact the voters chose not to adopt the referendum to that effect on May 21, 2013, the Commonwealth asserts there is no longer any actual controversy as to the legality of that action.

*Discussion*

We necessarily begin our analysis with a discussion of the Commissioners' contention that the issue before us is moot. While the Commissioners are correct that the mootness doctrine requires an actual case or controversy to be extant at all stages of a proceeding, and an issue may become moot during the pendency of an appeal due to an intervening change in the facts of the case, they fail to acknowledge that the mootness doctrine is not without exception. This Court has repeatedly recognized two exceptions to the mootness doctrine: (1) for matters of great public importance and (2) for matters capable of repetition, which are likely to elude review. *See Rendell v. State Ethics Com'n,* 603 Pa. 292, 983 A.2d 708, 719 (2009). Moreover, we have found this exception applicable where a case involves an issue that is important to the public interest or where a party will suffer some detriment without a court decision. *Com., Dept. of Environmental Protection,* 32 A.3d at 651–652.

When this Court granted allocatur herein, the possibility that the issue would have become moot prior to the time it was ripe for our review was evident; however, we find the ballot issue Pilchesky raises concerning the interplay among provisions in the Home Rule Law is an important one that is capable of repetition yet likely to evade review. The time constraints inherent in election matters often leave little time for deliberation upon challenges relevant thereto such that the courts may not always be able to render an appropriate decision in matters such as the one presented herein. Therefore, we find an exception to the mootness doctrine, and we will proceed to consider the merits of Pilchesky's claim.

As this matter requires the interpretation and application of various statutory provisions, our standard of review is *de novo. See In re Carroll,* 586 Pa. 624, 896 A.2d 566, 573

(2006). When analyzing the interplay among statutory provisions, we are guided by well-settled principles of statutory construction.

> Under our rules of statutory construction, our goal is to ascertain and effectuate the intent of the Legislature, recognizing that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). We must interpret words in a statute according to their "common and approved usage." 1 Pa.C.S. § 1903. When the words of a statute are not explicit, we may ascertain the intent of the General Assembly by considering among other things the occasion and necessity of the statute and the mischief to be remedied. 1 Pa.C.S. § 1921(c).

*Diehl v. Unemployment Compensation Bd. of Review (ESAB Group. Inc.),* 618 Pa. 592, 57 A.3d 1209, 1216–17 (2012).

Statutory provisions relating to the same subject must be read *in pari materia. See* 1 Pa.C.S. § 1932. "[I]t is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include. Consequently, [a]s a matter of statutory interpretation, although one is admonished to listen attentively to what a statute says; one must also listen attentively to what it does not say." *Commonwealth v. Johnson,* 611 Pa. 381, 26 A.3d 1078, 1090 (2011) (internal quotations and citations omitted).

The instant matter calls upon this Court to consider whether an amendment to an existing home rule charter which would convert an elected row office to an appointed position, abolish certain other elected row offices, and redefine the duties of the abolished row offices as legislative powers under the Charter may originate from an ordinance-generated referendum question on a primary ballot without the benefit of a government study commission under the Home Rule Law. A county's home rule charter defines the powers, structure, privileges, rights, duties, and limitations thereon of the municipal government as well as provides for the composition and election of the governing body to be chosen by popular

elections. 53 Pa.C.S. § 2902. Herein, the Charter states that the elected officers of the County shall be:

(a) Three (3) County Commissioners.

(b) Controller.

(c) Treasurer.

(d) District Attorney.

(e) Sheriff.

(f) Clerk of Judicial Records.

(g) Recorder of Deeds.

(h) Register of Wills.

(i) Coroner.

335 PA. CODE § 1.2–201 (1977).

Section 1.16–1609 of the Charter directs that "[t]his Charter may be amended in conformity with the provisions of the Pennsylvania Home Rule Charter and Optional Plans Law, Act 62 of 1982 (P.L. 184) as amended." [14] Moreover, Section 1.3–302 of the Charter provides that the Commissioners shall have all the legislative powers that may be exercised by the County under Pennsylvania's laws and constitution, which include the power to enact, amend or repeal ordinances, and to establish, abolish or reorganize departments except that any reorganization will not eliminate offices established by the Charter. 335 PA. CODE § 1.3–302(a), (*l*) (1977).

Subchapter B of the Home Rule Law controls the adoption of optional forms of government, defined to include home rule charters and optional plans. *See* 53 Pa.C.S. § 2902 ("Definitions"); §§ 2911–2930 ("Procedure for adoption of home rule charter or optional plan of government"). Subchapter C governs the amendment of an existing home rule charter. *See* 53 Pa.C.S. §§ 2941–2944 ("Amendment of existing charter or optional plan"). 53 Pa.C.S. § 2911 provides for the submission of a referendum question for the election of a government study commission to review the existing form of a municipality's government and to consider the advisability of adopting a

14. This is codified as "Subpart E" of the General Local Government Code. 335 PA. CODE § 1.16–1609; *See* 53 Pa.C.S. §§ 101, 2901–3171.

home rule charter or an optional form of government. *See* 53 Pa.C.S. § 2911, 2912. The term "government study commission" or "commission" as it is defined in the Home Rule Law indicates that it is a "body elected under the provisions of Subchapter B (relating to procedure for adoption of home rule charter or optional plan of government)."

■ The governing body, or electors, may authorize a government study commission no earlier than every four years. See 53 Pa.C.S. § 2927. The government study commission is to hold hearings and to recommend one of four enumerated actions, *i.e.* a referendum on whether a home rule charter or an optional plan of government should be adopted, that the form of government should remain unchanged, or any other action consistent with its functions. *See* 53 Pa.C.S. §§ 2920, 2923. The form of government may be changed no earlier than every five years. *See* 53 Pa.C.S. § 2929. Notably, Section 2930 defines the status of forms of government for the balance of the Home Rule Law. Section 2930 states:

> For the purposes of this subpart, each of the optional forms of government provided by this subpart and each of those optional forms as modified by any available provisions concerning, ... election of municipal officials ... is hereby declared to be a complete and separate form of government provided by the General Assembly for submission to the electors.

53 Pa.C.S. § 2930. As such, any modification of provisions concerning the "election of municipal officials" produces a separate form of government for the purposes of the Home Rule Law. The adoption of a new form of government is subject to the procedure· of electing a government study commission and subsequent referendum outlined in Subchapter B. *See* 53 Pa.C.S. § 2911(a).

According to 53 Pa.C.S. § 2941(a)-(b), county commissioners may commence the process of amending a home rule charter via an ordinance that places the proposed amendment before the electorate at a subsequent election, and the Commissioners offered the proposed changes to the Charter as an

"amendment;" however, despite this characterization, the modifications are, in fact, "declared" by the Home Rule Law to be a new form of government. The Charter provides that Lackawanna is a "municipality." 335 PA. CODE § 1.1–102. Among its several municipal officers are the Sheriff, Clerk of Judicial Records, Recorder of Deeds, and Register of Wills, all of whom are elected by the voters. 335 PA. CODE § 1.2–201. The Commissioners sought to alter provisions of the Charter which provided for the election of these enumerated municipal officers. As Pilchesky argues, under the plain language of Section 2930, the modification of the Charter in this respect equates to the adoption of "a complete and separate form of government."

The provisions of Subchapter C are not to the contrary. The only place wherein a statutory provision included within Subchapter C of the Home Rule Law specifically speaks to a change in the method of election is in the narrow exception for county commissioners in 53 Pa.C.S. § 2941(b). This provision renders the creation of a government study commission unnecessary prior to "changes in the method of election of a municipal governing body from at large elections to elections by district, maintain at-large elections or a combination of at-large elections and elections by district." As such, these changes, otherwise covered by the broad language of Section 2930, may be accomplished via the Subchapter C procedure. *See* 53 Pa.C.S. § 2941(b). Indeed, if the Commonwealth Court is correct that *any* amendments—no matter how fundamental—may be accomplished without a government study commission, then 53 Pa.C.S. § 2941(b) would be superfluous.

The Commissioners did not seek to change the method of electing a municipal governing body; they sought to make fundamental alterations in the form of government by transforming the office of Sheriff from an elected to an appointed position and abolishing three row offices which heretofore had been elected. Pilchesky correctly highlights several interests served by employing a government study commission when the home rule municipality seeks to limit electoral choices. Pilchesky asserts that election of a government study commis-

sion, generally composed of local residents, is "vital to due process and accountability." The Commissioners are obligated to conduct public hearings and discussions and to consider the issues over an extended period of time, thereby permitting and encouraging broader public awareness and participation than in the ordinance-driven process. *See* Pilchesky's Brief at 16–17.

Upon an application of well-settled principles of statutory construction, we find that in light of the plain language of the Home Rule Law and the considerations Pilchesky raises, the amendment proposed by the Commissioners constitutes a change in the form of government that may be accomplished only by following the procedure outlined in Subchapter B of the Home Rule Law which requires the election of a government study commission. *See* 53 Pa.C.S. § 2911–2930. Accordingly, the decision of the Commonwealth Court is Reversed.

Chief Justice CASTILLE, Justices SAYLOR, EAKIN, BAER, TODD and McCAFFERY join the opinion.