J-A16028-15

2015 PA Super 213

| | |
|---|---|
| EDWARD T. EGAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| RACHEL MCGRAW EGAN | |
| Appellee | No. 3159 EDA 2014 |

Appeal from the Order Entered December 17, 2013
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2004-00979

| | |
|---|---|
| EDWARD T. EGAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| RACHEL MCGRAW EGAN | |
| Appellee | No. 3184 EDA 2014 |

Appeal from the Order Entered October 23, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2004-00979

BEFORE:  LAZARUS, OLSON and PLATT,* JJ.

OPINION BY OLSON, J.:                    **FILED OCTOBER 05, 2015**

Edward T. Egan ("Husband") appeals from an order entered on October 23, 2014.  In this case of first impression, we consider whether a stipulation to modify a previous court order setting alimony payments is governed by 23 Pa.C.S.A. § 3105(c), which prohibits judicial modification of

_____

*Retired Senior Judge assigned to the Superior Court.

an agreement regarding alimony, or by 23 Pa.C.S.A. § 3701(e), which permits a trial court to modify alimony orders. After careful consideration, we hold that section 3105(c) governs where the parties reach a stipulation that modifies a prior order directing the payment of alimony. In this case, the parties did just that. Therefore, the stipulation they reached is governed by section 3105(c) and is not subject to judicial modification. As we also conclude Husband is not entitled to relief on his remaining claims, we affirm.

The factual background and procedural history of this case are as follows. Husband and Rachel McGraw Egan ("Wife") are the parents of three adult children, aged 28, 25, and 22. On May 1, 2002, after a three-day bench trial, the Circuit Court for Montgomery County, Maryland ("the circuit court") entered a judgment terminating the marriage of Husband and Wife. The judgment of divorce required Husband to pay $4,000.00 per month in child support, $4,000.00 per month in alimony for a period of one year, and $3,000.00 per month in alimony thereafter. On January 21, 2004, Husband filed a praecipe to register the circuit court's judgment in the Court of Common Pleas of Montgomery County, Pennsylvania ("the trial court").

On April 12, 2005, Husband and Wife entered into a stipulation regarding child support and alimony. Per that stipulation, the parties agreed to transfer the circuit court's alimony and child support order to the trial court. The parties further agreed that, in order to extinguish outstanding child support and alimony arrearages, Wife would accept a one-time payment of $7,000.00 from Husband. The parties also agreed that Husband

would pay $1.00 per month in alimony through June 2012. Thereafter, Husband agreed to pay $3,000.00 per month in alimony until Husband's death, Wife's death, Wife's cohabitation, or Wife's remarriage. The stipulation also provided that Husband would pay $4,500.00 in child support through June 2012. If, however, Husband sought to decrease his child support obligation prior to July 2012, his alimony obligation would increase by the same amount and Husband would be required to reimburse Wife for her increased tax burden. In this event, the parties' stipulation expressly provided that Husband's increased alimony obligation would not be subject to judicial modification. On April 19, 2005, the trial court adopted the stipulation as an order of court "until further [o]rder of the Montgomery County Court of Common Pleas." Order, 4/18/15.

On February 1, 2013, Husband filed a petition seeking modification of his alimony obligation. On March 7, 2013, Wife filed an answer and counterclaim. In her counterclaim, Wife sought enforcement of the April 19, 2005 court order. She further requested the trial court find Husband in contempt for violating the April 19, 2005 court order. Finally, Wife sought counsel fees relating to her defense against Husband's petition. On December 17, 2013, the trial court found that the April 19, 2005 order was not subject to modification under 23 Pa.C.S.A. § 3105(c) in the absence of a specific provision allowing judicial amendment. It, therefore, denied Husband's petition and scheduled a hearing on Wife's counterclaim. Husband appealed the December 17, 2013 order and this Court quashed the

appeal as taken from a non-final order. ***Egan v. Egan***, 158 EDA 2014 (Pa. Super. Feb. 21, 2014) (*per curiam*).

On August 22, 2014, a hearing on Wife's counterclaim was held. On October 23, 2014, the trial court found in favor of Wife on her counterclaim for enforcement and found Husband in contempt of the April 19, 2005 court order. The trial court ordered Husband to pay $61,654.00 in back child support and alimony. It further ordered attachment of Husband's wages in order to pay the $3,000.00 in monthly alimony required by the April 19, 2005 order. The trial court, however, declined to award Wife counsel fees. This timely appeal followed.

Husband presents five issues for our review:

[1.] Where an indefinite alimony order which is not the result of an agreement between the parties is entered by a trial court and subsequently modified by stipulation, is the order entered on that stipulation subject to further [c]ourt modification pursuant to 23 Pa.C.S.A. § 3701(e) absent language in the stipulation permitting modification?

[2.] Where a stipulation for indefinite alimony modifies [a] prior court order[ for] alimony but does not contain language permitting further modification, does that indefinite alimony become permanent alimony not subject to further modification based on changed circumstances?

[3.] Does a stipulation between the parties providing for indefinite alimony which modified prior [c]ourt ordered alimony constitute a contract not subject to modification pursuant to 23 Pa.C.S.A. § [3105](c) absent modification language in the stipulation?

[4.] Should [Husband] have been found to be in contempt of an alimony order despite having presented evidence of his inability

to comply with the order and despite having made significant and substantial efforts to comply with the order?

[5.] Should [Husband] be required to pay an excessive amount of alimony based on a stipulation thereby depriving [Husband] of a reasonable standard of living?

Husband's Brief at 6.

In his first three issues, Husband argues that the April 19, 2005 order is subject to modification pursuant to 23 Pa.C.S.A. § 3701(e). The trial court found that the April 19, 2005 order was not subject to modification pursuant to 23 Pa.C.S.A. § 3105(c). Wife defends this determination. "Statutory interpretation is a question of law and, as such, our standard of review is de novo and our scope of review is plenary." *Gallo v. Conemaugh Health Sys., Inc.*, 114 A.3d 855, 863 (Pa. Super. 2015) (internal quotation marks and citation omitted).

"When interpreting a statute, we are guided by the Statutory Construction Act," 1 Pa.C.S.A. § 1501 et seq. *W.C.F. v. M.G.*, 115 A.3d 323, 333 n.1 (Pa. Super. 2015). "[O]ur paramount interpretative task is to give effect to the intent of our General Assembly in enacting the particular legislation under review." *Commonwealth v. Schultz*, 116 A.3d 1116, 1120 (Pa. Super. 2015) (internal quotation marks and citation omitted). "Generally, the best indication of the General Assembly's intent may be found in the plain language of the statute. In this regard, it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." *Commonwealth v. Devries*, 112

A.3d 663, 670 (Pa. Super. 2015) (internal quotation marks and citations omitted). "Statutory provisions relating to the same subject must be read in *pari materia*." **Pilchesky v. Lackawanna Cnty.**, 88 A.3d 954, 965 (Pa. 2014), *citing* 1 Pa.C.S.A. § 1932. Furthermore,

> [w]henever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S.A. § 1933.

We thus turn to the statutory language at issue in this case. Section 3105 provides, in relevant part:

> (a) Enforcement.--A party to an agreement regarding matters within the jurisdiction of the court under this part, whether or not the agreement has been merged or incorporated into the decree, may utilize a remedy or sanction set forth in this part to enforce the agreement to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement.
>
> * * *
>
> (c) Certain provisions not subject to modification.--In the absence of a specific provision to the contrary appearing in the agreement, a provision regarding the disposition of existing property rights and interests between the parties, alimony, alimony *pendente lite*, counsel fees or expenses shall not be subject to modification by the court.

23 Pa.C.S.A. § 3105. Section 3701(e) provides that:

> (e) Modification and termination.--An order entered pursuant to this section[, relating to alimony,] is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon the order may be modified, suspended, terminated or reinstituted or a new order made. Any further order shall apply only to payments accruing subsequent to the petition for the requested relief. Remarriage of the party receiving alimony shall terminate the award of alimony.

23 Pa.C.S.A. § 3701(e).

Husband first argues that there is no conflict between sections 3105(c) and 3701(e). He argues that section 3105(c) only applies to comprehensive marital settlement agreements reached at the time of divorce. In other words, Husband argues that in order for an alimony agreement not to be subject to modification, it must be included as one part of a larger marital settlement agreement. Husband contends, therefore, that section 3701(e) applies in situations like this, where the stipulation covers only alimony and was entered after the parties' divorce. In support of this argument, Husband first points to the use of the word "provision" twice in the text of section 3105(c). We conclude that Husband's proposed construction of section 3105(c) does not comport with its plain language.

As noted above, section 3105(c) prohibits modification of an agreement unless a "specific provision to the contrary" appears in the agreement. 23 Pa.C.S.A. § 3105(c). The word "provision" in this context refers only to a provision in the parties' agreement allowing for amendment. It does not imply that a broader agreement is necessary in order for section 3105(c) to apply. Instead, the use of the word "provision" merely indicates

that, in order to permit amendment, the parties' agreement must include a statement that the court has the power to change the agreement absent the consent of both parties.

The second use of the word "provision" in section 3105(c) also does not support Husband's argument. Like the first use of the word "provision," the second use of that term refers simply to certain terms within an agreement that are not subject to judicial revision in the absence of specific language indicating the parties' consent to such review. Contrary to Husband's suggestion, while section 3105(c) discusses legal consequences that arise from the inclusion (or exclusion) of certain language in an agreement between the parties, it sets no threshold requirement that the included language appear in a more comprehensive agreement before section 3105(c) can be applied. In other words, not every agreement covered by section 3105 must include the eight types of provisions discussed in section 3105. Our reading of section 3105(c) finds further support in the use of the disjunctive "or," which indicates that section 3105(c) can apply to an agreement which relates to fewer than the five types of provisions outlined in the subsection. There is no indication, as Husband seems to suggest, that section 3105(c) excludes an agreement that covers only certain subjects such as alimony.

Husband also argues that the phrase "disposition of" in section 3105(c) indicates that it is inapplicable in the present factual scenario. Specifically, Husband argues that the issue of alimony was "disposed of" in

the circuit court's divorce judgment. According to Husband, the parties' stipulation merely modified this previously addressed issue. Because the circuit court's divorce judgment "disposed of" Husband's alimony payments to Wife, Husband maintains that section 3701(e) applies and that the parties' stipulation is subject to judicial modification.

This argument also misconstrues the language of section 3105. The phrase "disposition of" modifies the initial item in the list of topics that a court cannot alter absent the parties' consent. The first item refers to the allocation, or "disposition of," existing property rights and interests between the parties. Thus, the term "disposition of" does not appear to modify the word "alimony" in section 3105(c). In any event, even if the phrase "disposed of" did modify the word "alimony" in section 3105(c), that does not mean a stipulation that modifies court-ordered alimony is not covered by the statutory provision. An issue can be "disposed of" on more than one occasion. For example, arrangements regarding child custody can be disposed of dozens of times throughout the course of a divorce. Section 3105(c) does not say "disposition for the first time." Instead, it merely refers to the "disposition of" various issues that arise in divorce litigation. Therefore, it could refer to a first disposition or a subsequent disposition. As noted above, we may not "add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." **Devries**, 112 A.3d at 670 (internal quotation marks and citations omitted). Husband attempts to do exactly that by adding to section 3105(c) the requirements

that the agreement in question cover more than just alimony and be entered into prior to any court order relating to the provisions set forth in the statute. These prerequisites appear nowhere in the statute. Accordingly, we reject Husband's interpretation of section 3105.

Husband also relies upon a specific portion of the parties' stipulation to support his claim that judicial amendment is proper. Specifically, Husband cites a provision in the parties' stipulation which provided that, if Husband sought to reduce his child support obligation, then his alimony payment would increase by that same amount and he would become responsible for Wife's added income tax burden. *See* Appellant's Brief at 16. In this instance, the agreement barred judicial modification of the increase in Husband's alimony obligation. Husband argues that since he did not seek a reduction in child support, his alimony payment always remained subject to judicial modification. Despite Husband's contentions, we read this provision as supportive of our conclusion that section 3105(c) precludes judicial modification of Husband's negotiated alimony payment.

Under section 3105(b), the trial court possesses the authority to modify child support obligations notwithstanding the provisions of an agreement between divorce litigants. *See* 23 Pa.C.S.A. § 3105(b). By including a provision within their agreement that penalized Husband if he took advantage of section 3105(b), the parties specifically acknowledged the applicability of section 3105 when they entered the stipulation and took affirmative steps to preclude judicial modification of Husband's alimony

payments. Therefore, we do not read this provision as supportive of Husband's claim on appeal.

Furthermore, Husband's construction of section 3105(c), which limits that provision to situations in which parties enter into comprehensive marital settlement agreements prior to any court action, would not give full effect to section 3105(c). Nothing in the plain language of section 3105(c) prevents the private reordering of alimony obligations after a judicial alimony order has been entered. Moreover, given our concerns for judicial economy and the preservation of limited judicial resources, we see no reason to forbid such activity. It would discourage litigants from resolving their alimony disputes if section 3105(c) did not apply in such situations. Instead, negotiated resolution of disagreements over alimony would always be subject to judicial reinterpretation and litigants would have no incentive to bargain in good faith because the prospect of enforcement would lack certainty. Therefore, we reject Husband's construction of sections 3105(c) and 3701(e) and turn to our own analysis of the applicable statutory language.

The plain language of section 3105(c) prohibits judicial modification of alimony agreements while the plain language of section 3701(e) permits the modification of court-ordered alimony. We turn now to consider whether the application of section 3105(c) to stipulations that modify court-ordered alimony conflicts with the underlying purposes of the respective statutory provisions. *See* 1 Pa.C.S.A. § 1933.

- 11 -

In 1988, our General Assembly significantly amended the Divorce Code. **See** 1988 P.L. 66. As relevant to this case, the General Assembly enacted 23 P.S. § 411.1 (repealed). Effective March 19, 1991, the legislature repealed section 411.1 and replaced it with section 3105. **See** 1990 P.L. 1240. Section 3105 is substantively the same as section 411.1. "While § 3105(c) was a newly enacted amendment in 1988, it was merely a codification of the existing Pennsylvania law." **McMahon v. McMahon**, 612 A.2d 1360, 1365 (Pa. Super. 1992) (*en banc*).

This Court has addressed the purpose behind the common law as codified by section 3105(c). In **DeMatteis v. DeMatteis**, 582 A.2d 666 (Pa. Super. 1990), we held that prohibiting modification of certain provisions found in marital settlement agreements "acts to protect such pre-existing [contractual] rights and obligations." **Id.** at 672 (emphasis removed); **McMahon**, 612 A.2d at 1365 (citation omitted). In other words, the purpose of section 3105(c) is to encourage marital settlement agreements by assuring the parties that the courts will enforce the agreements as written.

On the other hand, section 3701(e) recognizes that court-ordered alimony is based upon 17 statutory factors. **See Lawson v. Lawson**, 940 A.2d 444, 447 (Pa. Super. 2007) (construing 23 Pa.C.S.A. § 3701(b)), *appeal denied*, 951 A.2d 1165 (Pa. 2008). Therefore, when circumstances change, the amount of alimony due should also change to reflect the new economic realities of the parties. **See Levine v. Levine**, 520 A.2d 466, 468

(Pa. Super. 1987) ("[T]he circumstances of the parties are subject to changes throughout each of the steps in the dissolution of the marriage. . . . The trial court, consequently, must consider these changes in deciding whether to terminate the award, grant a new form of award, or change the amount of the award."); *but see Willoughby v. Willoughby*, 862 A.2d 654, 656-658 (Pa. Super. 2004) (although incarceration may change the statutory alimony factors it is not a change in circumstances warranting revised alimony). Thus, the purpose of section 3701(e) is to ensure that alimony, which is not the result of an agreement between the parties, remains subject to modification to reflect the parties' changed circumstances.

It is evident that our application of section 3105(c) in this case will not offend the purposes of sections 3105(c) and 3701(e). Specifically, if alimony agreements are to be encouraged, then section 3105(c) must govern. Parties will be willing to enter into such agreements only if they know that courts will enforce the terms of the agreement. Without such assurances, there would be little incentive to enter into an alimony agreement. Broader application of section 3105(c) is necessary to satisfy its purpose. We also note that section 3105(c) allows the parties to permit modification of alimony. This may be beneficial if either or both parties anticipate future changes in their financial conditions.

Section 3701(e)'s purpose is satisfied if it is applied only where no alimony agreement has been formed. When an alimony agreement exists,

the statutory factors outlined in section 3701(b) have not been employed to determine the amount of alimony that is due. Instead, the parties agree to fix the level of alimony based upon factors they deem relevant. Thus, application of section 3701(e) in cases where an alimony agreement exists is unnecessary. On the other hand, where alimony is implemented by judicial order, application of section 3701(e) is necessary to effectuate its purpose. In such cases, the court determines alimony based upon a snapshot of the section 3701(b) factors at the time of the divorce. Over time, however, those factors can change significantly. The obligor may lose his or her job and, therefore, not be able to provide the same standard of living to his or her former spouse. Section 3701(e) is necessary in those cases so the trial court can alter the alimony obligation when its snapshot is no longer an accurate picture of the parties' financial situation. It would be unequitable to require an individual to pay an unreasonable amount of alimony when he or she did not consent to the alimony award.

For all of these reasons, we hold that section 3105(c) governs a stipulation to modify a pre-existing alimony obligation. Accordingly, Husband is not entitled to relief on his first three claims.

In his fourth and fifth issues, Husband argues that the trial court erred by enforcing the terms of the parties' agreement. Specifically, he argues it is inequitable to find him in contempt for violating a court order despite his significant attempts at satisfying his obligations under the order. Furthermore, he contends that requiring a $3,000.00 per month alimony

payment would result in him having an unreasonable standard of living. As this Court has explained:

> To be found in civil contempt, a party must have violated a court order. Accordingly, the complaining party must show, by a preponderance of the evidence, that a party violated a court order. The alleged contemnor may then present evidence that he has the present inability to comply and make up the arrears.

*Childress v. Bogosian*, 12 A.3d 448, 465 (Pa. Super. 2011) (internal citations omitted). "[A] trial court's findings on a contempt petition will not be disturbed absent an abuse of discretion." *Mazurek v. Russell*, 96 A.3d 372, 378 (Pa. Super. 2014).

In this case, there is no dispute that Husband violated the April 19, 2005 court order. Instead, Husband argues that he proved he was unable to comply with the trial court's order. Husband argues that the trial court effectively ordered him to surrender 62% of his net monthly income to Wife. As the trial court aptly noted, however, Husband's "annual income of approximately $89,000.00 allowed him enough disposable income to make financial charitable contributions [of approximately $3,000.00 per year] in 2009, 2010, and 2011." Trial Court Opinion, 1/23/15, at 8. The trial court also found that Husband "provided no persuasive evidence of his current monthly expenses which would demonstrate that paying his child support and alimony obligations was an 'impossibility' based on his monthly income." *Id*. After careful review of the certified record, we conclude that the trial court's factual findings are supported by the record. *See, e.g.*, N.T., 8/22/14, at 95-96.

- 15 -

Furthermore, even if Husband is correct that the trial court ordered him to surrender 62% of his income, his remaining net income is over 150% of the federal poverty guidelines. *See* 80 Fed. Reg. 3236 (Jan. 22, 2015). Thus, he is not being denied a reasonable standard of living because of the trial court's contempt order. Instead, he is being required to live a modest lifestyle because of his decision to enter into the alimony agreement with Wife. Thus, we conclude that the trial court did not abuse its discretion in finding Husband in contempt of court.

In sum, we hold that section 3105(c) governs when the parties enter a stipulation to modify court-ordered alimony. As such, the trial court correctly determined that it lacked the authority to modify the parties' alimony agreement. In addition, the trial court properly held Husband in contempt and ordered him to pay $3,000.00 per month in alimony along with back alimony and child support.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/5/2015

- 16 -