J. A11007/15

2015 PA Super 235

ANTHONY BURKE,                          :        IN THE SUPERIOR COURT OF
BY HIS PNG JOHN BURKE                   :             PENNSYLVANIA
                                        :
                v.                      :
                                        :
INDEPENDENCE BLUE CROSS,                :           No. 2299 EDA 2011
                                        :
                Appellant               :


Appeal from the Order Entered July 19, 2011,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. February Term, 2010, No. 002226


BEFORE:  FORD ELLIOTT, P.J.E., WECHT AND FITZGERALD,* JJ.


OPINION BY FORD ELLIOTT, P.J.E.:              **FILED NOVEMBER 13, 2015**

Independence Blue Cross ("IBC") appeals from the order entered July 19, 2011, holding that IBC was required to provide coverage for school-based applied behavioral analysis, a type of autism-related service, notwithstanding a place-of-service exclusion in the policy which specified that no services would be covered if the care was provided at certain types of locations, including schools. The trial court found that Act 62, codified at 40 P.S. § 764h, requires coverage of medically necessary treatment for autism spectrum disorders, including applied behavioral analysis, regardless of whether it is otherwise excluded by the policy. In a memorandum, this court reversed the trial court's order without addressing the merits of the issue, finding that appellee, Anthony Burke ("Burke"), did not have a right of

_____
* Former Justice specially assigned to the Superior Court.

statutory appeal under Act 62. Our supreme court reversed and remanded to this court for consideration of the merits of the appeal, finding that while Burke could not bring a statutory appeal under Act 62, he could seek declaratory and injunctive relief in the court's original jurisdiction. Our supreme court concluded that the lack of appellate jurisdiction under the relevant Act 62 provision was the result of a legislative drafting error, and that individuals in Burke's position must have access to a judicial forum. Now, on remand, after careful consideration, we agree with the trial court that irrespective of the policy's exclusion of all school-based services, Act 62 required IBC to cover Burke's "in school" applied behavioral analysis services during the relevant policy period. As such, we affirm and remand for further proceedings to determine what relief, if any, is appropriate or even possible.

The trial court summarized the history of this case as follows:

> The parties agree on the relevant facts. Anthony Burke, a minor child of John Burke, suffers from an Autism Spectrum disorder. He had been receiving Applied Behavior Analysis (ABA) services in the home to treat his condition before August 25, 2009. On that date, the plaintiff's father, John Burke, requested that Independence Blue Cross (IBC) pay for similar ABA services at Anthony's elementary school, a local Catholic parish school. Magellan Health Services, IBC's administrator for mental health and substance abuse coverage, denied this request. In denying coverage, Magellan pointed to a provision in the Health Plan Policy which stated that "no benefits will be provided for services . . . [f]or care in a school." Burke appealed this decision and it was eventually submitted to IPRO, an independent "Certified Review Agency," which upheld

Magellan's denial. At the time his claim came before IPRO, Anthony was six years old.

On January 1, 2010, Act 62 came in to effect, codified in 40 P.S. § 764h(a). Act 62 provides that "[a] health insurance policy . . . shall provide to covered individuals . . . for the treatment of autism spectrum disorders." "Treatment" is defined by the Act to include "rehabilitative care," which, in turn, is defined to "Include[e] [(sic)] applied behavioral analysis." 40 P.S. 764h(f)(15); 40 P.S. 764h(f)(12). Act 62 further provides that "[c]overage under this section shall be subject to . . . general exclusions . . . to the same extent as other medical services or programs covered by the policy are subject to these provisions." 40 P.S. § 764h(c).

On July 1, 2010, Mr. Burke's health plan converted to a self funded policy of a sort not subject to the requirements of Act 62. The parties agree that IBC cannot be liable for a failure to provide coverage either before January 1, 2010 or after July 1, 2010. The question before this court is only whether Act 62 required IBC to cover Anthony's "in school" ABA services from the period between January 1st and July 1st of 2010.

The parties submitted to the Court the following Stipulation of Facts:

1.    The Independence Blue Cross policy which provided coverage to the plaintiff until July 1, 2010 contained the following exclusion, which applies to all services under the policy:

      "Except as specifically provided in this contract, no benefits will be provided for services, supplies or charges:

      a.    For care in a nursing home, home for the aged, convalescent home, school,

- 3 -

> institution for retarded children, custodial care in a skilled nursing facility"

2. On January 1, 2010, Act 62 (40 P.S. §764h, "Autism Spectrum Disorders Coverage") became effective as it relates to the plaintiff, January 1st being the anniversary date of the Independence Blue Cross policy in question.

3. Effective July 1, 2010, the [c]overage provided both Suzanne M. [B]urke and her husband, John T. Burke, converted from fully funded insurance policies to self funded healthcare coverage.

4. Act 62 is inapplicable to such self funded healthcare programs.

5. Independence Blue Cross has no responsibility to provide insurance coverage, pursuant to the quoted exclusion in its policy, for any "in school" services to plaintiff.

6. The only issue before this court going forward is whether or not Act 62 voids the "place of service" exclusion in the Independence Blue Cross policy for the period of January 1, 2010 through July 1, 2010.

Trial court opinion, 7/19/11 at 1-3.

The trial court ruled in favor of Burke, and as stated above, on appeal, this court reversed, finding that the trial court lacked jurisdiction. Act 62, 40 P.S. § 764h(k)(2), provides for an appeal of an order of an expedited independent external review "disapproving a denial or partial denial." In the instant case, the external review agency, IPRO, had approved a denial of

coverage. Therefore, by the plain language of the statute, Burke could not take a statutory appeal.

Our supreme court granted review to consider whether individuals diagnosed with autism-spectrum disorders have a right to judicial review of a denial of insurance coverage. Initially, however, the court had to decide whether the matter was moot, where the Burkes were now self-insured and coverage ended July 1, 2010. According to IBC, Burke never offered any evidence that his family incurred out-of-pocket expenses for delivery of ABA services at his school. Obviously, if Burke never sought autism services between January 1 and July 1, 2010, it would be impossible for an order to issue that would have any practical effect. *Burke v. Independence Blue Cross*, 103 A.3d 1267, 1270 (Pa. 2014). The court in *Burke* decided that a well-recognized exception to the mootness doctrine applied, *i.e.*, that the question was of great public importance and/or capable of repetition while evading appellate review:

> This is so due to: (a) the prevalence of autism-spectrum-disorder diagnoses; and (b) the significant amount of time that ordinarily elapses between when an insurer originally denies coverage and when this Court—after multiple levels of administrative and judicial review—finally rules on whether such denial was permissible under Act 62. Moreover, as in *Rendell*, "we have before us a narrow, focused, purely legal issue in sharp controversy" between the parties, in which the salient legal analysis is unaffected by the extra-record circumstances raised by Insurer. [*Rendell v. Pa. State Ethics Comm'n*, 983 A.2d 708, 718 (Pa. 2009).] Additionally, the interpretive question involved affects potentially

> thousands of individuals across the Commonwealth diagnosed with autism-spectrum disorders within the context of an enactment governing insurance coverage for those individuals. Under these circumstances, we find it appropriate to undertake the evaluative task raised by the underlying facts relative to the availability of judicial review.

*Id.* at 1271-1272.

Our supreme court in **Burke** then went on to determine that the statute was not ambiguous, but was apparently the result of legislative oversight. Obviously, an agency order "disapproving a denial" of coverage would never be appealed by an insured individual because it represents a decision that coverage should be provided. *Id.* at 1273. While the statutory text provides that "An insurer or covered individual" may appeal a decision disapproving a denial or partial denial, only one of the parties given this right (the insurer) would ever have cause to exercise it. *Id.* An insured individual would never be aggrieved by such a disapproval. *Id.* Ultimately, the court in **Burke** held that while it could not simply rewrite the statute under the guise of statutory construction to read, "approving or disapproving," which is surely what was intended, individuals in Burke's position must have access to a judicial forum and the Declaratory Judgments Act provided the trial court with original jurisdiction. Our supreme court then remanded the matter back to this court to consider the merits of the appeal.

IBC has raised the following issues on appeal:

> A.  Must the decision of the trial court to grant prospective relief to [Burke], who was no longer insured by [IBC] at the time of the decision, be vacated on the grounds of mootness?
>
> B.  Did the trial court err in dismissing [Burke]'s motion for judgment on the pleadings in favor [of] a hybrid procedure of stipulated facts and briefing of the legal issue sanctioned pursuant to the Quality Health Care Accountability and Protection Action Act, 40 P.S. § 991.2101, and the statute mandating coverage for autism services, 40 P.S. § 764h?
>
> C.  Assuming that the action and decision were not moot, and the procedure utilized by the trial court was authorized, did the trial court commit an error of law in determining that the policy's general exclusion for services rendered in a school was unenforceable pursuant to 40 P.S. § 764h?

IBC's brief at 4.

Initially, we must determine whether this appeal is moot. As stated above, in **Burke**, our supreme court found an exception to the mootness doctrine for purposes of addressing the narrow issue of the right of judicial review. However, IBC claims the underlying issue, whether or not Act 62 provides coverage despite the policy's place of service exclusion, is still moot because the Burkes are no longer insured by IBC and they made no demand for monetary damages during the six-month period in question, January 1, 2010 to July 1, 2010. IBC argues that their complaint and motion for judgment on the pleadings requested prospective relief only, and the Burkes shifted to a self-insured plan as of July 1, 2010. (IBC's brief at 11-12.)

According to IBC, the Burkes did not allege that any ABA services had, in fact, been provided to Anthony at his parochial school, and they did not seek any damages for out-of-pocket costs incurred in paying for ABA services after IBC denied their request for school-based ABA services. (*Id.*) Thus, IBC contends that the entire matter is moot and there is no justiciable controversy between the parties.

> The mootness doctrine requires that there is an actual case or controversy at all stages of review. ***Pilchesky v. Lackawanna Cnty.***, 624 Pa. 633, 88 A.3d 954, 964 (Pa.2014). "[A]n issue may become moot during the pendency of an appeal due to an intervening change in the facts of the case[.]" ***Id.*** "An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect." ***Johnson v. Martofel***, 797 A.2d 943, 946 (Pa.Super.2002). Appellate courts in this Commonwealth have recognized three exceptions, permitting decision on an issue despite its mootness: "1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court." ***In re D.A.***, 801 A.2d 614, 616 (Pa.Super.2002) (***en banc***) (citations omitted).

***Selective Way Ins. Co. v. Hospitality Group Services, Inc.***, ___ A.3d ___, 2015 WL 4094398 at *3 (Pa.Super. 2015) (***en banc***). "Therefore, if the issues raised by an appeal are 'substantial questions' or 'questions of public importance,' and are capable of repetition, yet likely to evade appellate review, then we will reach the merits of the appeal despite

its technical mootness." *In re Duran*, 769 A.2d 497, 502 (Pa.Super. 2001) (citation omitted).

Here, we agree with Burke that the issue is of great public importance and should be addressed. Our supreme court, as stated above, has already noted the prevalence of autism-spectrum disorder diagnoses and the significant amount of time that typically elapses between denial of coverage and when the appellate courts finally rule on the permissibility of such denial. Anthony Burke's right under Act 62 to receive autism services in school raises a question of substantial public importance as it affects potentially tens of thousands of Pennsylvania schoolchildren. (Burke's brief at 15.) In addition, as Burke points out, this is purely a question of statutory construction and does not implicate constitutional concerns, which Pennsylvania courts have been loathe to address abstractly. (*Id.*) *See In re Gross*, 382 A.2d 116, 120 (Pa. 1978) (expressing the court's special reluctance to consider moot questions which raise constitutional issues). As such, we will proceed to address the merits of the claims raised on appeal.

Turning briefly to IBC's second issue on appeal, it claims that Burke's statutory appeal was an appeal *de novo* and that the trial court erroneously limited its scope of review to matters included in the record before the external reviewer, IPRO. (IBC's brief at 17.) According to IBC, by limiting its consideration to the record before IPRO, the trial court prevented IBC from developing facts to prove that Burke did not have coverage in the first

instance. (*Id.* at 19-20.) For example, IBC contends that there was no evidence a treatment plan was in place for Anthony Burke as required by the autism statute; he never alleged the providers he intended to utilize to provide ABA services were licensed to do so pursuant to the statute; and there was no evidence in the record that Burke's parochial school would permit a classroom aide to accompany him throughout the school day. As such, IBC argues that there was no proof the coverage mandated by the statute could be afforded to Burke in the first instance. (*Id.* at 18-19.)

IBC's procedural objections as to the form of the action have been resolved by our supreme court. As described *supra*, while Burke could not take a statutory appeal from an order approving a denial of coverage, by the plain and unambiguous language of Section 764h(k)(2), Burke's complaint is properly considered as an original-jurisdiction action seeking declaratory and injunctive relief. *Burke*, 103 A.3d at 1274-1275. "Declaratory judgments are nothing more than judicial searchlights, switched on at the behest of a litigant to illuminate an existing legal right, status or other relation." *Wagner v. Apollo Gas Co.*, 582 A.2d 364, 365 (Pa.Super. 1990), quoting *Doe v. Johns-Mansville Corp.*, 471 A.2d 1252, 1254 (Pa.Super. 1984). "Under the Declaratory Judgment Act, '[c]ourts . . . have the power to declare rights, status and other legal relations whether or not further relief is or could be claimed.'" *Id.* at 365-366, quoting 42 Pa.C.S.A. § 7532 (emphasis deleted).

Here, the narrow issue to be decided by the trial court was whether Act 62 required IBC to cover Burke's in-school ABA services during the relevant policy period, irrespective of the contractual exclusion. The issue was one of statutory construction. Questions of fact, including whether Burke had an appropriate treatment plan in place, and whether the autism service providers he intended to utilize were licensed by the Commonwealth, cannot be decided by this court, as this court is not a fact-finding tribunal. To the extent they are not rendered moot by the fact that Burke is no longer insured by IBC and has not pled specific damages, these questions will have to be resolved on remand by the trial court. As Burke points out, there was no reason to present claims for reimbursement to IBC when pre-service requests for authorization had already been denied. (Burke's brief at 8.) Now that the issue of IBC's contractual exclusion of coverage of in-school services is decided, the case can be remanded for a determination as to whether any services were actually provided to Burke during the stipulated time period and what, if anything, he had to pay out-of-pocket for services rendered.

We now turn to the central inquiry in this case, whether Act 62 provides for coverage of ABA services in school, despite IBC's general policy exclusion. Act 62 provides, in relevant part, as follows:

### § 764h.  Autism spectrum disorders coverage

(a)   A health insurance policy or government program covered under this section shall

- 11 -

provide to covered individuals or recipients under twenty-one (21) years of age coverage for the diagnostic assessment of autism spectrum disorders and for the treatment of autism spectrum disorders.

40 P.S. § 764h(a).

(14) "Treatment of autism spectrum disorders" shall be identified in a treatment plan and shall include any of the following medically necessary pharmacy care, psychiatric care, psychological care, rehabilitative care and therapeutic care that is:

(i) Prescribed, ordered or provided by a licensed physician, licensed physician assistant, licensed psychologist, licensed clinical social worker or certified registered nurse practitioner.

(ii) Provided by an autism service provider.

(iii) Provided by a person, entity or group that works under the direction of an autism service provider.

(15) "Treatment plan" means a plan for the treatment of autism spectrum disorders developed by a licensed physician or licensed psychologist pursuant to a comprehensive evaluation or reevaluation performed in a manner consistent with the most recent clinical report

or recommendations of the American Academy of Pediatrics.

40 P.S. § 764h(f)(14), (15).

> (2) "Autism service provider" means any of the following:
>
>> (i) A person, entity or group providing treatment of autism spectrum disorders, pursuant to a treatment plan, that is licensed or certified in this Commonwealth.
>>
>> (ii) Any person, entity or group providing treatment of autism spectrum disorders, pursuant to a treatment plan, that is enrolled in the Commonwealth's medical assistance program on or before the effective date of this section.

40 P.S. § 764h(f)(2).

> (12) "Rehabilitative care" means professional services and treatment programs, including applied behavioral analysis, provided by an autism service provider to produce socially significant improvements in human behavior or to prevent loss of attained skill or function.

40 P.S. § 764h(12).

> (1) "Applied behavioral analysis" means the design, implementation and evaluation of environmental modifications, using behavioral stimuli and consequences, to produce socially significant improvement in human behavior or to prevent loss of attained skill or function, including the use of direct observation, measurement and functional analysis of the relations between environment and behavior.

40 P.S. § 764h(f)(1).

However, Act 62 contains the following limiting provision:

> (c) Coverage under this section shall be subject to copayment, deductible and coinsurance provisions and any other general exclusions or limitations of a health insurance policy or government program to the same extent as other medical services covered by the policy or program are subject to these provisions.

40 P.S. § 764h(c).

As noted above, IBC's policy contains a general school exclusion providing that, "[N]o benefits will be provided for services, supplies or charges:  For care in a nursing home, home for the aged, convalescent home, school, institution for retarded children, Custodial Care in a Skilled Nursing Facility."  IBC argued that it excludes services provided in these settings as a form of quality control, because it is unable to monitor the services as they are being delivered.  (Trial court opinion, 7/10/11 at 3.) "IBC argues that because it does not provide these services for any sufferers

of any condition, this policy is a general exemption that relieves them from providing ABA service 'in schools' under § 764h(c)." (*Id.* at 3-4.)

In interpreting Act 62 to require IBC to provide ABA services in school despite the general exclusions exception in Section 764h(c), the trial court relied on the principle that the specific controls the general, *i.e.*, that a more specific rule or provision will control a later and more general rule or provision where both apply to the same facts. The trial court found that delivery of ABA services in a school setting has been proven effective as a treatment for autism spectrum disorders and IBC's interpretation would render meaningless Act 62's overall mandate that insurance carriers cover "the treatment of autism spectrum disorders." (*Id.* at 9.) Thus, the trial court determined that the best reading of Act 62 is that Section 764h(a) controls and limits the operation of Section 764h(c), rather than the reverse. (*Id.*)

In so holding, the trial court gave significant weight to the *amicus curiae* brief filed by the Pennsylvania Insurance Department and Pennsylvania Insurance Commissioner ("the Department"), opining that IBC's exclusion of any services provided by a school was not a permissible general exclusion contemplated by Section 764h(c), and to interpret the statute otherwise would allow the general exclusion to eviscerate the

mandate.[1]  The Department noted that Act 62 mandates coverage for treatment of autism spectrum disorders, including, specifically, ABA services, so long as the provider satisfies the basic criteria in the law.  (**Amicus curiae** brief of Pennsylvania Insurance Department, 7/20/10 at 8.)  The Department concluded that the fact the service is being provided in a school setting should not be permitted to trump the clear intent of the statutory mandate:  "To permit an insurer to exclude a class of providers (e.g., autism service providers who provide services in an institutional setting) who otherwise meet that definition would be in direct conflict with the Autism Coverage Law."  (**Id.**)  The Department also explained that in Notice 2009-03, providing guidance on the applicability of the "general exclusions" language, a distinction was drawn between mere "limitations" on the provision of services, such as scope and duration limitations, and general exclusions on services specifically delineated in the Autism Coverage Law. (**Id.** at 6-7.)  General limitations, such as requiring all medical services to be provided by a participating provider as a prerequisite for payment of services, are permissible; however, an insurance carrier is prohibited from applying a general exclusion to any of the types of services specifically mentioned in the statute.  (**Id.**)  By way of example, the Department stated

---

[1] "We note in this connection that the construction of a statute by those charged with its execution and application is entitled to great weight and should not be disregarded or overturned except for cogent reasons, and unless it is clear that such construction is erroneous."  **Appeal of Longo**, 132 A.2d 899, 901 (Pa.Super. 1957) (citations omitted).

that Section 764h(c) would permit an insurer to deny coverage for acupuncture treatment, whether or not an autism provider believed it may provide some benefit to his patient. (***Id.***)[2]

We agree with the trial court that there is an inherent ambiguity or conflict between Section 764h(c), stating that insurers may opt out of coverage pursuant to a "general exclusion," and those provisions of Act 62 requiring coverage of treatment of autism spectrum disorders, including ABA services. As the trial court observes, the Department published a Notice to

---

[2]
> Those <u>types</u> of services or treatments for autism spectrum disorders <u>not specified</u> by Act 62 may be subject to "general exclusions" of a policy pursuant to 40 P.S. § 764h(c), provided they are excluded "to the same extent" as for other medical services covered by the policy. By way of example, if a policy generally excludes acupuncture treatment, and an autism provider believes that acupuncture may provide some benefit to his autism patient, that particular treatment may nonetheless be excluded from the mandated coverage.

***Id.***, quoting Notice 2009-03 (emphasis in Department's brief).

> A policy may impose general limitations, such as scope and duration limitations, on coverage for autism spectrum disorders so long as such limitations are imposed "to the same extent" as those imposed upon other medical services covered by the policy. For example, if a policy or contract requires all medical services to be provided by a participating provider as a prerequisite for payment of services, autism services may also be required to be provided by a participating provider as a prerequisite for payment of those services.

***Id.*** at 7, quoting Notice 2009-03, 39 Pa. Bulletin 1927.

address this seeming conflict.  (Trial court opinion, 7/10/11 at 4.)  (*See* Department's *amicus* brief at 3 ("on April 11, 2009, the Department issued Notice 2009-03 to address this very issue, i.e., the correlation of mandated coverage provisions with general exclusion language in the Autism Coverage Law.").)  Where there is an ambiguity, we may turn to rules of statutory construction for guidance.

### § 1921.  Legislative intent controls

(a)   The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly.  Every statute shall be construed, if possible, to give effect to all its provisions.

(b)   When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c)   When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

   (1)   The occasion and necessity for the statute.

   (2)   The circumstances under which it was enacted.

   (3)   The mischief to be remedied.

   (4)   The object to be attained.

   (5)   The former law, if any, including other statutes upon the same or similar subjects.

>> (6) The consequences of a particular interpretation.
>>
>> (7) The contemporaneous legislative history.
>>
>> (8) Legislative and administrative interpretations of such statute.

1 Pa.C.S.A. § 1921.

> In interpreting any statute, appellate courts must take note of the principles of statutory interpretation and construction. The principal objective of interpreting a statute is to effectuate the intention of the legislature and give effect to all of the provisions of the statute. 1 Pa.C.S.A. § 1921(a); ***Commonwealth v. Drummond***, 775 A.2d 849, 855-56 (Pa.Super.2001) (***en banc***) (stating that appellate courts must evaluate each section of a statute because there is a presumption that the legislature intended for the entire statute to be operative).

***Commonwealth v. Webbs Super Gro Products, Inc.***, 2 A.3d 591, 594 (Pa.Super. 2010). ***See also Wilson v. Central Penn Industries, Inc.***, 452 A.2d 257, 259 (Pa.Super. 1982) ("In determining the legislative intent, the sections of a statute must be read together and construed with reference to the entire statute. A construction which fails to give effect to all provisions of a statute or which achieves an absurd or unreasonable result must be avoided.") (citations omitted). "The canons of statutory construction require that a statute be read in a manner which will effectuate its purpose, a task which compels consideration of more than the statute's literal words." ***Pennsylvania Human Relations Commission v. Chester***

***School Dist.***, 233 A.2d 290, 295 (Pa. 1967) (citations omitted).

Furthermore,

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both.  If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S.A. § 1933.  ***See also Petition of Turkey Run Fuels, Inc.***, 95 A.2d 370, 372 (Pa.Super. 1953) ("Where a specific provision follows a general provision in the same statute, the specific provision prevails and is construed as an exception to the general provision.") (citations omitted).

Here, while Act 62 does provide for general exclusions or limitations in a health insurance policy, it also specifically refers to rehabilitative care including ABA services.  By including ABA services among a specific list of treatments that insurance carriers must cover, we agree with the trial court that the legislature did not intend for ABA services to be excluded from coverage for a particular child because of where those services would be provided.  Clearly, by passing Act 62, the legislature intended to expand coverage for treatment of autism spectrum disorders, including ABA services, pharmacy care, psychiatric care, occupational therapy, etc.  We agree with the trial court that by permitting IBC to exclude ABA services when provided in a school or institutional environment, the legislative

mandate would be undermined. **See also Burke**, 103 A.3d at 1272 n.5 (noting the legislative history of Act 62 including the bill's sponsor in the House expressing that the statute "will provide essential protections against inappropriate denials [of coverage] on the front end, while a new expedited review process for denied claims will provide those protections on the back end"; **id.** at 1274 n.7 (noting that 30 members of the Pennsylvania House of Representatives submitted an **amicus** brief stating that they intended for Act 62 to benefit individuals needing autism services); Governor's Message, July 9, 2008 ("By requiring private health insurers to shoulder their fair share of the cost of treatment, we're taking steps to address the gap in the private insurance market and reduce reliance on government programs as the primary source of services and funding."). As the trial court noted, while not binding, the Department's opinion is entitled to some weight. (Trial court opinion, 7/10/11 at 10.) The Department's determination that a contrary interpretation of Act 62 would trump the intent of the mandate is supported by the rules of statutory construction.

Finally, we address IBC's contention that Act 62 must be read **in pari materia** with the federal Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1487. "Congress enacted IDEA in 1970 to ensure that all children with disabilities are provided 'a free appropriate public education which emphasizes special education and related services designed to meet their unique needs [and] to assure that the rights of [such] children and

their parents or guardians are protected.'" ***Forest Grove School Dist. v.***

***T.A.***, 557 U.S. 230, 239 (2009) (citations omitted) (footnote omitted).

> After examining the States' progress under IDEA, Congress found in 1997 that substantial gains had been made in the area of special education but that more needed to be done to guarantee children with disabilities adequate access to appropriate services. ***See*** S.Rep. No. 105-17, p. 5 (1997). The 1997 Amendments were intended 'to place greater emphasis on improving student performance and ensuring that children with disabilities receive a quality public education.' ***Id.***, at 3. Consistent with that goal, the Amendments preserved the Act's purpose of providing a FAPE to all children with disabilities.

***Id.*** However, "the IDEA cannot be read to require school districts to provide on-site services to disabled children voluntarily enrolled in private schools. To the contrary, school districts have discretion to determine whether to provide such services on-site." ***Russman v. Board of Educ. of City of Watervliet***, 150 F.3d 219, 222 (2nd Cir. 1998). ***See also KDM ex rel. WJM v. Reedsport School Dist.***, 196 F.3d 1046, 1049 (9th Cir. 1999), ***cert. denied***, 531 U.S. 1010 (2000) ("Every circuit that has considered whether the IDEA as amended in 1997 requires services to be provided on site at a private school has concluded it does not.") (collecting cases).

### § 1932. Statutes in pari materia

    (a)    Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things.

    (b)    Statutes in pari materia shall be construed together, if possible, as one statute.

1 Pa.C.S.A. § 1932. "In order for a Court to read statutes together, it must be established that the statutes relate to the same thing or the same class of people." *Buehl v. Horn*, 728 A.2d 973, 980 (Pa.Cmwlth. 1999) (citations omitted).

Here, Pennsylvania's Act 62 is specifically addressed to the treatment of autism spectrum disorders including provision of ABA services in an institutional or school setting by a licensed or certified autism service provider pursuant to a treatment plan. While there may be some overlap between the two, we do not consider Act 62 to be *in pari materia* with the federal IDEA. As the trial court remarks,

> By creating overlapping statutes requiring the provision of services, the legislature may thus have chosen to pass some of the cost of ABA services to insurance carriers (and by extension insurance policy holders) while still maintaining State sponsored services for uninsured children. For these reasons, it is easily imaginable that the General Assembly intended for both IDEA-associated Statutes and Act 62 to provide overlapping protections by operating in concert with one another.

Trial court opinion, 7/10/11 at 6.

For these reasons, we conclude that Act 62 requires IBC to provide ABA services "in school" despite the general exclusion in the insurance policy. The matter is remanded to the trial court to determine what, if any, damages Burke may recover.

J. A11007/15

Order affirmed. Remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.


Wecht, J. joins the Opinion.

Fitzgerald, J. files a Dissenting Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/2015

- 24 -